UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 1:13-cr-00159-SEB-MG-1 |
| v. | ORDER ON MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A) |
| DEANDRE ARMOUR | (COMPASSIONATE RELEASE) |

Upon motion of ⊠ the defendant □ the Director of the Bureau of Prisons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), and after considering the applicable factors provided in 18 U.S.C. § 3553(a) and the applicable policy statements issued by the Sentencing Commission, IT IS ORDERED that the motion is:

⊠ DENIED.

□ DENIED WITHOUT PREJUDICE.

□ OTHER:

⊠ FACTORS CONSIDERED: See attached opinion.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:13-cr-00159-SEB-MG |
| | ) | |
| DEANDRE ARMOUR, | ) | -1 |
| | ) | |
| Defendant. | ) | |

## ORDER

Defendant Deandre Armour has filed a motion seeking compassionate release under § 603

of the First Step Act of 2018, which is codified at 18 U.S.C. § 3582(c)(1)(A). Dkt. 354. For the

reasons explained below, his motion is **DENIED**.

### I.      Background

In January 2015, following a five-day jury trial, a jury found Mr. Armour guilty of Count

1, conspiracy to commit armed bank robbery, Count 2, attempted armed bank robbery, and Count

3, using carrying, brandishing, or discharging a firearm during and in relation to a crime of violence

(attempted armed bank robbery). Dkt. 213. The Seventh Circuit summarized the evidence

presented at trial as follows:

> On the morning of June 26, 2013, appellant Deandre Armour directed two other
> men as they attempted to rob a bank branch in a suburb of Indianapolis. Duryea
> Rogers and Xavier Hardy hid outside the bank entrance and forced a teller into the
> bank at gunpoint as she was opening the locked door. Armour sat in the bank
> parking lot and directed Rogers and Hardy by radio. Armour had recruited Rogers
> and Hardy before the robbery. He supplied them with clothing, reserved their hotel
> rooms, and orchestrated the plan.
>
> Inside the bank, Hardy stood lookout for more arriving employees while Rogers
> ordered the teller to disable the bank's alarm and open the safe. No other bank
> employees were trying to go inside the bank because they had not been given the
> all-clear signal. In the meantime, the teller inside the bank was unable to open the

safe. Once Rogers realized the bank teller could not open the safe, he told Armour over the radio that they needed to abort the robbery. Rogers and Hardy forced the teller to the floor, tied her with plastic "zip ties," and stole her car to flee. All three men were arrested quickly; two firearms were found with them.

*United States v. Armour*, 840 F.3d 904, 906 (7th Cir. 2016), *as amended* (June 26, 2017).

Mr. Armour faced a guidelines range of 360 months to life imprisonment. Dkt. 244 at 21. He also faced a mandatory minimum sentence of seven years on Count 3 which was mandatorily consecutive. *Id.* The Court sentenced him to 324 months of imprisonment (60 months on Count 1, 240 months on Count 2, concurrent, and 84 months on Count 3, consecutive) to be followed by 5 years of supervised release. Dkt. 253 at 2–3.

Mr. Armour appealed his sentence. On November 1, 2016, the Seventh Circuit upheld his conviction and sentence on Counts 1 and 2 but vacated his sentence on Count 3. See *Armour v. United States*, 840 F.3d 904 (7th Cir. 2017). The case was remanded for resentencing of the imprisonment portion of Count 3, and the Court issued an identical sentence on remand. Dkt. 320 at 2–3. The Bureau of Prisons ("BOP") lists Mr. Armour's anticipated release date (with good-conduct time included) as July 25, 2036. https://www.bop.gov/inmateloc/ (last visited April 9, 2024).

Mr. Armour has filed a motion for compassionate release *pro se*. Dkt. 354. Mr. Armour argues that he establishes extraordinary and compelling reasons for compassionate release because (1) a change in the law has produced a disparity between the sentence he received and sentence he would receive today; and (2) he wants to be released so that he can provide care for his sister and her son who require a full-time caregiver. *Id.* The United States has filed an opposition to the motion, dkt. 360, and Mr. Armour filed a reply, dkt. 361, and letter in support of his motion, dkt. 362. The motion is now ripe for the Court's consideration.

## II.      Discussion

The general rule is that sentences imposed in federal criminal cases are final and may not be modified. 18 U.S.C. § 3582(c). Yet, under one exception to this rule, a court may reduce a sentence "after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable," if it finds that there are "extraordinary and compelling reasons" that warrant a reduction. 18 U.S.C. § 3582(c)(1)(A)(i). The Seventh Circuit has held that district courts have broad discretion in determining what constitutes "extraordinary and compelling reasons" under the statute. *United States v. Gunn*, 980 F.3d 1178, 1180–81 (7th Cir. 2020). The district court must "consider[] the applicant's individualized arguments and evidence," *United States v. Rucker*, 27 F.4th 560, 563 (7th Cir. 2022), but, ultimately, "[t]he movant bears the burden of establishing 'extraordinary and compelling reasons' that warrant a sentence reduction." *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021). On this point, the United States Sentencing Commission recently amended the Guidelines Manual to identify several new circumstances as "extraordinary and compelling" reasons potentially warranting compassionate release. *See* U.S.S.G. § 1B1.13 (Nov. 2023).

### A.  Exhaustion

Section 3582(c)(1)(A) includes an administrative exhaustion provision, which states that a court may reduce a defendant's sentence "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). The exhaustion requirement of § 3582(c)(1)(A) is a mandatory claim-processing rule that "must be enforced when properly invoked." *United States v. Sanford*, 986 F.3d 779, 782 (7th Cir. 2021).

The Seventh Circuit has held that "in order properly to exhaust, an inmate is required to present the same or similar ground for compassionate release in a request to the Bureau as in a motion to the court." *United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021). A primary purpose of the exhaustion requirement is to provide notice to the Warden of the defendant's claims. *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013) (evaluating an exhaustion defense in a § 1983 claim) ("Thus, once a prison has received notice of, and an opportunity to correct, a problem, the prisoner has satisfied the purpose of the exhaustion requirement.").

The Government invokes the exhaustion requirement arguing that Mr. Armour did not properly exhaust his claims because he did not fully explain his claim that a change in the law would warrant his release and because the recent guidelines amendments upon which Mr. Armour's motion now relies were not yet in force. Dkt. 360 at 2, 18.

Mr. Armour submitted a request for a reduction in sentence to the Warden of his facility on September 13, 2023, asking for release based on his family circumstances and a change in the law. Dkt. 354-1 at 1. The Warden responded on September 14, 2023, denying the requested reduction. *Id.* At that time, the new amendments to the Sentencing Guidelines, upon which Mr. Armour relies, were not yet in effect. The Warden evaluated the request based on the guidelines as they existed at the time of both the request and the response. *Id.* The Warden was never given notice of or an opportunity to properly evaluate any claims based on the new amendments to the guidelines. Without such notice and opportunity, Mr. Armour's claims were never subjected to the requisite exhaustion process, and he therefore did not exhaust claims based on the new guidelines. For that reason, Mr. Armour's motion must be **denied**.

### B.  Compassionate Release

Even if Mr. Armour had properly exhausted his claims, because he has not presented an extraordinary and compelling reason for release and the § 3553 factors weigh against release, his motion would still fail.

Mr. Armour contends that the disparity between the sentence he received and the sentence he might receive if he was sentenced today establishes an extraordinary and compelling reason to release him. Specifically, he argues that his Count 3 conviction using carrying, brandishing, or discharging a firearm during and in relation to a crime of violence would not be lawful today following the Supreme Court's decision in *United States v. Taylor*, 596 U.S. 845 (2022). Dkt. 354 at 6. He claims that without a conviction on this count, he would not have been subjected to an additional mandatory consecutive sentence of 7 years. *Id.* at 15. He also claims that, if he were resentenced, he could not be considered a career offender because his prior convictions are now too old to qualify him for the career offender enhancement. *Id.* at 15–16.

For several years, the Seventh Circuit has repeatedly affirmed its conclusion that non-retroactive statutory changes and new judicial decisions are not extraordinary and compelling reasons for granting compassionate release, whether considered alone or in combination with any other factors. *See United States v. Thacker*, 4 F.4th 569, 574 (7th Cir. 2021) (holding that non-retroactive change to statutory mandatory minimum sentence was not extraordinary and compelling reason for relief under § 3582(c)(1)(A)(i) and that district court cannot consider such a change, whether alone or in combination with any other factor, when determining whether defendant has established extraordinary and compelling reasons potentially warranting a sentence reduction). As summarized by the Seventh Circuit:

> When deciding whether "extraordinary and compelling reasons", 18 U.S.C. § 3582(c)(1)(A)(i), justify a prisoner's compassionate release, judges must not rely on non-retroactive statutory changes or new judicial decisions.... *There's nothing "extraordinary" about new statutes or caselaw*, or a contention that the sentencing

6

> judge erred in applying the Guidelines; these are the ordinary business of the legal
> system, and their consequences should be addressed by direct appeal or collateral
> review under 28 U.S.C. § 2255.

*United States v. King*, 40 F.4th 594, 595 (7th Cir. 2022) (emphasis added; cleaned up); *see also*

*United States v. Von Vader*, 58 F.4th 369, 371 (7th Cir. 2023) (quoting *United States v. Brock*, 39

F.4th 462, 466 (7th Cir. 2022) ("Judicial decisions, whether characterized as announcing new law

or otherwise, cannot alone amount to an extraordinary and compelling circumstance allowing for

a sentence reduction")).  Under the *Thacker* line of cases, any potential sentencing disparity clearly

does not qualify as an extraordinary and compelling reason potentially warranting a sentence

reduction, and the Court would abuse its discretion were it to find otherwise.

The Court recognizes that, effective November 1, 2023, the United States Sentencing

Commission amended the Guidelines Manual to identify several new circumstances as

"extraordinary and compelling" reasons potentially warranting compassionate release. *See*

https://www.ussc.gov/guidelines/amendments/adopted-amendments-effective-november-1-2023

(last visited April 9, 2024). One such new circumstance is related to defendants who received an

"unusually long sentence":

> If a defendant received an unusually long sentence and has served at least 10 years
> of the term of imprisonment, a change in the law (other than an amendment to the
> Guidelines Manual that has not been made retroactive) may be considered in
> determining whether the defendant presents an extraordinary and compelling
> reason, but only where such change would produce a gross disparity between the
> sentence being served and the sentence likely to be imposed at the time the motion
> is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6).

The *Thacker* line of cases can be read to hold that the statutory definition of "extraordinary"

does not extend to law changes, which means there is a question about whether the Sentencing

Commission exceeded its authority when it added this item to the list of potentially extraordinary

7

and compelling reasons warranting a sentence reduction under § 3582(c)(1)(A)(i). *See United States v. LaBonte*, 520 U.S. 751, 757 (1997) ("Broad as [the Commission's] discretion may be, however, it must bow to the specific directives of Congress."). The Court need not, however, reach that question in Mr. Armour's case—even if the Commission was within its authority to adopt § 1B1.13(b)(6)—for two reasons: (1) He has not met his burden to show that there is a "gross disparity" between the sentence he is serving and the sentence he would receive today even without his count 3 conviction, and (2) the aging of his prior conviction passed the point that they could be used today to give him career offender status is not a "change in the law" producing any disparity.

Mr. Armour's current sentence is 324 months. Even without taking into account his Count 3 conviction, this would be a sentence below his guidelines range of 360 months to life. Mr. Armour has not shown that a sentence even further below the low end of his guidelines range would be appropriate in his case. Moreover, at the time of his sentence, the Court took his mandatory minimum sentence on Count 3 which was also mandatorily consecutive into account in crafting the sentence. Dkt. 274 at 25 (sentencing transcript) ("THE COURT: Well, the Court's challenge, of course, is to weave together all these threads and strands of evidence, and statements by the defendant and counsel, and the Court's own understanding of the guidelines and the applicable law so that the final sentence is a reasonable sentence as measured by 3553(a) factors."). The Court would have likely given, and would likely give today, Mr. Armour the same sentence today even if the final count were eliminated from Mr. Armour's record. For that reason, Mr Armour has not shown that there is a gross disparity between the sentence he is serving that sentence he would receive today.

To the extent that he has prior convictions which would not be held against him in sentencing if he were sentenced today, the Court finds this fact irrelevant to determining the

sentence he would likely receive today in a compassionate release motion. Mr. Armour claims that his convictions are now too old to render him a career offender and his guidelines range should be determined without his designation. However, the mere passage of time is not a "change in the law" that could create an extraordinary and compelling reason for release, and no changes in the law has been identified with regard to the guidelines treatment of his prior convictions. For these reasons, the Court finds that Mr. Armour has not met his burden to show that a change in the law has created a gross disparity between the sentence he received and the sentence he would receive today constitutes an extraordinary and compelling reason for his release whether considered alone or in combination with any other reason.

Mr. Armour next claims that his release is warranted because he would like to provide care for his sister, Labeebah Armour, and her son. Dkt. 354 at 16–18. He has submitted a letter from his sister attesting to her need for assistance in caring for her minor son who is a paraplegic. Dkt. 354-1 at 29. Mr. Armour's sister is suffering from kidney failure which renders her unable to provide around the clock care for her son due to weakness and fatigue caused by dialysis treatment. *Id.* at 29–31.

As relevant here, under section 1B1(b)(3) of the recently amended guidelines extraordinary and compelling reasons for release exist in the following circumstances:

(A) The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.

(B) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(C) The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.

(D) The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, 'immediate family member' refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

Mr. Armour's circumstances do not fall within those statutory parameters. Mr. Armour claims that he is the only available caregiver for his sister and her son. Dkt. 361 at 18. However, the evidence of this claim is lacking. Mr. Armour's PSR indicates that he has multiple siblings who, as of 2017, lived in the same area as Labeebah. Dkt. 314 at 18. In her letter, Mr. Armour's sister states that her other siblings "have become selfish as well as inconsiderate" and "feel [their] health issues are a burden on their lives that they are not willing to take on." Dkt. 354-1 at 30. Refusal provide care, however, does not equate to unavailability. There is no evidence in the record from these other siblings regarding any substantial reasons, such as work, geographical distance, or other family obligations, that would render them truly unavailable. Mr. Armour cannot rely on his family circumstance to justify his release where there is no evidence that other family members are not in fact available even where there is apparent reticence by family members to provide care. Mr. Armour has therefore failed to meet his burden that his family circumstances constitute an extraordinary and compelling reason for release, whether considered alone or in combination with any other reason.

Even if the Court were to assume that Mr. Armour had established an extraordinary and compelling reason, however, the Court would nevertheless find that Mr. Armour is not entitled to compassionate release because the sentencing factors under 18 U.S.C. § 3553 do not weigh in his

favor.[1] Mr. Armour has engaged in programming and maintained employment (with high marks from his supervisors) while in BOP. Dkt. 354-1 at 50. He also has no disciplinary history while incarcerated. *Id.* However, counseling against his release, Mr. Armour's offense was serious with placed multiple members of the public in danger, and he was the leader of the bank robbery operation. He also has an extensive, albeit aging, criminal history consisting of six prior felony convictions, several misdemeanor convictions, and a long juvenile history. Dkt. 314 at 11–16. His felony convictions include robbery, armed robbery, receiving stolen auto parts, and a conviction for escaping while in the custody of the Kosciusko County Jail. *Id.* at 14–16. Further, Mr. Armour is not scheduled to be released from prison until July 2036; thus, releasing him now would be a substantial reduction in his sentence.

In light of these considerations, the Court finds that releasing Mr. Armour early would not reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, or protect the public from further crimes. *See United States v. Ugbah*, 4 F.4th 595, 598 (7th Cir. 2021) ("[A]ll a district judge need do is provide a sufficient reason for [denying relief under § 3582(c)(1)]. One good reason for denying a motion . . . is enough; more would be otiose.").

---

[1] These factors are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed (a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (b) to afford adequate deterrence to criminal conduct; (c) to protect the public from further crimes of the defendant; and (d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for the defendant's crimes; (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

### III.    Conclusion

For the reasons stated above, Mr. Armour motion for compassionate release, dkt. [354], is

**denied**.

**IT IS SO ORDERED.**

Date:     4/11/2024

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel

Deandre Armour
Register Number: 11606-028
USP Terre Haute
U.S. Penitentiary
P.O. Box 33
Terre Haute, IN 47808